UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID CIEMPA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CV-0685-CVE-TLW |
| ) | |
| JUSTIN JONES, WALTER DINWIDDIE, ) | |
| DEBBIE L. MORTON, AL BLAIR, DICK ) | |
| BARTLEY, KAMERON HARVANEK, G. ) | |
| MCCLARY, CURTIS HOOD, JAMES ) | |
| CAVE, RICK BOYETT, JOHN DOE sued as ) | |
| "Unknown Employee," CHRIS REDEAGLE, ) | |
| LEO BROWN, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court are Defendants' Second Motion for Summary Judgment and Brief in Support (Dkt. # 90), Plaintiff's Motion to Supplement his Response to Defendants' Second Motion for Summary Judgment (Dkt. # 100), and Plaintiff's Second Motion to Reassert his Motion for Preliminary Injunction (Dkt. # 103). Defendants filed a response (Dkt. # 104) to Plaintiff's Second Motion to Reassert his Motion for Preliminary Injunction. After entry of the Court's prior Opinion and Order (Dkt. # 60), the only claims remaining in this action are (1) that Defendant McClary prevented Plaintiff from receiving a book he ordered, <u>Stoic Warriors: The Ancient Philosophy Behind the Military Mind</u> (hereinafter <u>Stoic Warriors</u>), in violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc <u>et</u> <u>seq</u>. (RLUIPA); and (2) that Defendants Brown and Jones wrongfully denied Plaintiff's request for organized chapel time for his group, the Five Percent Nation of Gods and Earths (hereinafter NGE), in violation of RLUIPA. The only remaining Defendants are Justin Jones, Gary McClary and Leo Brown, in their official capacities.

Plaintiff David Ciempa is currently incarcerated with the Oklahoma Department of Corrections (ODOC) at Dick Conner Correctional Center (DCCC).[1] Defendant Justin Jones is (or was, at the relevant times) the Director of ODOC. Dkt. # 18, at 1. Defendant Gary McClary is (or was, at the relevant times) a Security Personnel Sergeant at DCCC. Dkt. # 18, at 1; Dkt. # 43, at 20. Defendant Leo Brown is (or was, at the relevant times) the ODOC Agency Chaplain. Dkt. # 43-10, at 2-3. For the reasons discussed below, the Court finds Defendants' second motion for summary judgment shall be granted in part and denied in part. Plaintiff's motion to supplement his response shall be granted. Plaintiff's second motion to reassert his motion for preliminary injunction shall be denied.

## *PROCEDURAL HISTORY OF THIS CASE*

Ciempa filed his initial complaint (Dkt. # 1) on November 20, 2008. He filed an amended complaint (Dkt. # 6) on December 8, 2008, a second amended complaint (Dkt. # 10) on December 31, 2008, and a third amended complaint (Dkt. # 18) on June 2, 2009. On July 10, 2009, Ciempa filed a "motion for preliminary injunction and/or temporary restraining order" (Dkt. # 24). On July 14, 2009, the Court entered an Opinion and Order (Dkt. # 26) directing service of the third amended complaint and preparation of a special report pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), and denying Ciempa's motion for a preliminary injunction. The Martinez report (Dkt. # 43) was filed on October 23, 2009. Defendants filed a motion to dismiss and/or for summary judgment (Dkt. # 42). By Opinion and Order filed August 23, 2010 (Dkt. # 60), the Court granted summary judgment on all claims except the two claims identified above. On February 15, 2011, the remaining

---

[1]  Ciempa is serving four concurrent twenty-eight year sentences for convictions of attempted robbery with a firearm, assault and battery with a deadly weapon, and two counts of possession of a firearm. Dkt. # 43-2, at 2.

2

Defendants, i.e., McClary, Jones, and Brown, filed the second motion for summary judgment presently before the Court.

As a preliminary matter, the Court shall grant Plaintiff's motion to supplement. The exhibits attached to the motion have been considered in resolving the issues before the Court. The Court further finds that Plaintiff's "Second Motion to Reassert Motion for Preliminary Injunction" shall be denied. In that motion, Plaintiff seeks reconsideration of the issues resolved in the Opinion and Order (Dkt. # 60), filed August 23, 2010. The Court finds no clear error in the prior ruling, nor any other basis warranting reconsideration of the issues, including the denial of Plaintiff's prior motion for preliminary injunction.

*ANALYSIS*

**A.  Summary judgment standard**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court draws "all justifiable inferences," id. at 254, and construes the record in the light most favorable, Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), to the party opposing summary judgment.

Pro se pleadings must be liberally construed. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994).

**B. RLUIPA**

RLUIPA prohibits a government from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). The standards under RLUIPA are more strict than those under the Free Exercise Clause. Abdulhaseeb v. Calbone, 600 F.3d 1301, 1314 (10th Cir. 2010). In order to proceed with a RLUIPA claim, a plaintiff must demonstrate "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government."[2] Id. at 1312. Once the plaintiff produces prima facie evidence to support a claim, the government must show that the substantial burden is necessary to further a compelling governmental interest and is the least restrictive means of furthering that interest.[3] 42 U.S.C. § 2000cc-2(b).

While RLUIPA imposes a compelling interest standard, "'context matters' in the application of that standard." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005) (quoting Grutter v. Bollinger, 539 U.S. 306, 327 (2003)). In passing RLUIPA, Congress was "mindful of the urgency of discipline,

---

[2]   Courts must not judge the truth, significance, or centrality of the belief in question, but may inquire into the sincerity of a prisoner's professed religiosity. Lovelace v. Lee, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (cited in Abdulhaseeb, 600 F.3d 1314 n.6).

[3]   The plaintiff retains the burden to show that his religious exercise is substantially burdened. 42 U.S.C. § 2000cc-2(b).

order, safety, and security in penal institutions," and "anticipated that courts would apply [RLUIPA's] standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Id. at 722-23 (quoting S. REP. NO. 103-11, at 10 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1899, 1900).  The ODOC has a compelling interest in maintaining prison security and order.  See id. at 723 n.11 ("[c]ourts . . . may be expected to recognize the government's . . . compelling interest in not facilitating inflammatory racist activity that could imperil prison security and order").

**C. Plaintiff's remaining claims**

   **1. Possession of Stoic Warriors**

Ciempa alleges that his possession of the book Stoic Warriors was wrongly prohibited in violation of his rights under RLUIPA. The Court previously granted summary judgment on this issue to all Defendants except Defendant McClary.  During the pendency of this matter, ODOC officials reviewed the book and determined that Plaintiff could be allowed to possess the book without violating ODOC policies. Therefore, in December 2010, a copy of the book was delivered to Plaintiff. See Dkt. # 90, Ex. 1. Plaintiff confirmed receipt of the book on January 5, 2011.  Id.

First, the Court finds that Plaintiff's RLUIPA claim for injunctive relief has been rendered moot since he has now been allowed to possess the book Stoic Warriors. Furthermore, the Court finds that any delay in providing Plaintiff with a copy of Stoic Warriors did not violate Plaintiff's rights under RLUIPA.  As noted by Defendants, "Stoic Warriors is a philosophy book about the importance of a military mind set of soldiers who fight wars."  (Dkt. # 90 at 22, citing Ex. 6, Description of Stoic Warriors). Defendants further state that Stoic Warriors is not an NGE book nor

is it a religious text. Id. at 22-23. As a result, Defendants contend that Stoic Warriors is not subject to protection under RLUIPA. Id. at 23. In response to Defendants' argument, Plaintiff does not controvert Defendants' evidence that Stoic Warriors is not a religious text. See Dkt. # 95. He provides copies of ten (10) pages from the book (Dkt. # 95, last five pages of exhibits). Those pages support, rather than controvert, Defendants' assertion that the book is a philosophical treatise, exploring Stoicism in the context of the military. The Court concludes that Defendant McClary's failure to allow Plaintiff to possess Stoic Warriors did not substantially burden Plaintiff's free exercise of his religion. Therefore, Plaintiff is not entitled to a declaratory judgment or nominal damages on his claim based on the book Stoic Warriors. In the absence of a genuine issue of material fact concerning Defendant McClary's failure to provide promptly a copy of Stoic Warriors to Plaintiff, Defendant McClary is entitled to judgment as a matter of law.

### 2. Request for group chapel time

Ciempa alleges that ODOC has denied his request for space and time in the prison chapel to conduct NGE classes or meetings, in violation of his RLUIPA rights. Ciempa states that the requested classes would be "a forum for the expression and practice of his cultural (religious) beliefs and rites with members and non-members alike." Dkt. # 18, at 8. He states that "denying me a forum to teach is tantamount to denying me my cultural identity . . . ." Dkt. # 52, Ex. A, at 4. His request was denied because ODOC has a state-wide policy of denying religious meeting space and time to members of NGE "due to the racial and hate filled nature of the materials and doctrine of the Nation of Gods and Earth[s]." Dkt. # 43-10, at 2-3. In the prior Opinion and Order, see Dkt. # 60, the Court granted summary judgment on this issue to all Defendants except Defendants Jones and Brown and ruled as follows:

> Ciempa has made a prima facie case that denying his request for chapel time substantially burdens his religious exercise. He asserts that holding meetings and teaching are important to his NGE practice and identity. Therefore, defendants bear the burden of showing that banning the NGE from the chapel is the least restrictive means of achieving a compelling interest. Although the Court has determined that ODOC could rationally conclude that the NGE constitutes a security threat, see Part III.A.4.a, supra, the only evidence that ODOC actually reached such a conclusion is the Agency Chaplain's e-mail to Remer. This e-mail does not contain specific information as to the basis for ODOC's conclusion. See Abdulhaseeb, 600 F.3d at 1318 ("inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet [RLUIPA's] requirements") (quoting 146 Cong. Rec. 16698-99 (July 27, 2000)). By way of example, there is no evidence that NGE members have caused disruptions in ODOC prisons. Further, defendants have submitted no evidence that ODOC considered alternatives to a complete denial of chapel time to the NGE. Therefore, even assuming the NGE is a security threat, there is insufficient evidence that the ODOC's policy is the least restrictive means of maintaining prison order and security. See Abdulhaseeb, 600 F.3d at 1319 (noting that there was no discussion of whether the prison's refusal to accommodate prisoner's religious request was the least restrictive means the state could employ to satisfy its interests). Defendants have failed to meet their burden at this time. Therefore, defendants are not entitled to summary judgment on Ciempa's RLUIPA claim regarding the denial of chapel time.

Dkt. # 60. The Court further ordered that Defendants Jones and Brown could file an additional motion for summary judgment after a reasonable time for discovery.

In their second motion for summary judgment, Defendants first argue that Plaintiff's claim based on an alleged violation of RLUIPA fails because NGE is not a "religion." See Dkt. # 90. For the purposes of this case, however, the Court previously ruled that NGE would be treated as a religion within the meaning of RLUIPA. See Dkt. # 60 at 21 n.16. Defendants further argue that their denial of group time in the chapel has not "substantially burdened" Plaintiff's religious exercise. See Dkt. # 90. Again, the Court has previously ruled, see Dkt. # 60, that Plaintiff has made a prima facie case under RLUIPA. Therefore, the Court will consider whether Defendants have

8

shown that banning NGE as a group from the chapel is the least restrictive means of achieving a compelling governmental interest.

In arguing that they are entitled to summary judgment on this claim, Defendants state that:

> [T]he ODOC policy of denying organized chapel time to the N.G.E. was done after considerable research into the N.G.E., its background and its known and documented history. (Ex. 2, Aff. of Leo Brown); and (Ex. 3, Corrections Research re: N.G.E.). The ODOC Chaplin reviewed the N.G.E. literature as well as unclassified FBI files and reports on this group complied [sic] by other state penal institutions. (Ex. 2, Aff. of Leo Brown). It was determined, that the N.G.E. was akin to a prison gang and the N.G.E. was a substantial security threat within ODOC due to its racist content. (Ex. 2, Aff. of Leo Brown). ODOC maintains a no tolerance policy against racist groups or gangs. See [Doc. 42, SR, Part A, Att. 14]. The history of the N.G.E. is widely known in other state prison systems, which is why several prisons across the country list the N.G.E. as a security threat group, a racist gang and linked to prison violence. *See Harrison v. Watts*, 609 F. Supp. 561, 574, fn. 10 (E.D. Va. 2009) (listing a history of prison and law enforcement intelligence findings regarding the N.G.E.). (Ex. 3, Corrections research re: N.G.E.).
> . . . .
> Furthermore, a total ban on N.G.E. chapel time for a group that professes not to be a religion is the least restrictive means that could be employed [to] prevent racial problems and enforce ODOC's no tolerance policy against racist activities. Besides, the N.G.E. members are allowed to worship with other Islamic groups during their chapel times, practice their N.G.E. "religion" on their own in their cells, and possess certain N.G.E. materials that pass security standards. (Ex. 2, Aff. of Leo Brown); and (Ex. 4, ODOC e-mails). Clearly, ODOC is implementing the least restrictive means regarding Plaintiff's N.G.E. beliefs. ODOC did consider allowing the group to meet but the security risk inherent in this case is that allowing the N.G.E. to organize at all would pose a significant security risk and escalate racial tensions. (Ex. 2, Aff. of Leo Brown); and (Ex. 4, ODOC e-mails).

Dkt. # 90 at 17-19. Defendant Brown, the Agency Chaplain and Volunteer Coordinator for ODOC, states in his affidavit, see Dkt. # 90, Ex. 2, that in April of 2007, Correctional Religious Administrators were surveyed to determine whether accommodations were being made for NGE adherents. According to Defendant Brown, "[n]one of the responses . . . indicated that any agency was allowing offenders affiliated with the Nation of Gods and Earths to hold group meetings." Id. In addition, in October 2010, Defendant Brown surveyed peers through a group listing of National

9

Correctional Chaplaincy Administrators asking whether they allow offenders affiliated with N.G.E. to meet in groups. Dkt. # 90, Ex. 2 at ¶ 6. He received responses from 18 agencies: nine stated they had not received requests for group meetings; nine stated they denied requests for group meetings "due to the nature of the group." Id. Defendant Brown further states that because "the teachings of [N.G.E.] promote racial conflict . . . the least restrictive means we can use to accommodate the Nation of Gods and Earths is to allow them to practice their beliefs privately in their cell, receive literature from this organization which is screened according to our policy and allow supervised visits with approved outside representatives from this group." Id. at ¶ 7.

In response to Defendants' second motion for summary judgment, Plaintiff complains that Defendants have broadly applied ODOC policy provisions to ban group chapel time instead of narrowly tailoring the provisions. See Dkt. # 95. He also alleges that Defendants have failed to demonstrate the existence of a compelling governmental interest in banning group chapel time and that they have impermissibly presented post hoc rationalizations for their policy. Id. In support of his argument, Plaintiff asserts that "Defendants have not proffered any specific information as to the basis for ODOC's conclusion that NGE constitutes a security threat." See Dkt. # 95.

Upon review of the record, the Court finds Defendants have failed to demonstrate that allowing NGE group time in the chapel would compromise ODOC's compelling interest in institutional security. Defendants acknowledge that there is no evidence that Plaintiff or any member of NGE in the Oklahoma prison system has posed a security threat because of membership in NGE. Furthermore, although ODOC policy provides for the recognition of Security Threat Groups by the Internal Affairs Intelligence Unit, see OP-040119(I)(E)(3), ODOC has not determined that NGE is a "Security Threat Group." See Dkt. # 90, Ex. 9, attached Answers to Plaintiff's First Set of

Interrogatories by Defendant Justin Jones. The Court recognizes that Defendant Brown, the ODOC Chaplain, has provided his affidavit describing the information he relied on in concluding that NGE teachings promote racial conflict resulting in a serious security threat in the correctional setting. See Dkt. # 90, Ex. 2. However, the information cited by Defendant Brown is dated and is not specific to ODOC. Furthermore, while Defendants point to racially divisive NGE literature describing the black man as God and the white man as the devil, see Dkt. # 90, Ex. 3, Plaintiff emphatically argues that NGE does not promote violence. See Dkt. # 95, Ex. A.

In addition, even if Defendants have shown that NGE group meetings would constitute a security threat, Defendants have not carried their burden of showing that banning NGE as a group from the chapel is the least restrictive means of achieving their compelling governmental interest. "In other strict scrutiny contexts, the Supreme Court has suggested that the Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means." Washington v. Klem 497 F.3d 272, 284 (3d Cir. 2007) (citing Warsoldier v. Woodford, 418 F.3d 989, 999 (9th Cir. 2005) (in turn citing United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 824 (2000))). To carry their summary judgment burden, prison officials generally must demonstrate they considered and rejected the efficacy of less restrictive measures before adopting the challenged policy or practice. Id.

In this case, the Court must examine the record to determine whether banning NGE from group time in the chapel is the least restrictive means of advancing ODOC's compelling interest in insuring facility security. See United States v. Wilgus, 638 F.3d 1274, 1289 (10th Cir. 2011). Defendants merely state that "ODOC did consider allowing the group to meet but the security risk inherent in this case is that allowing the N.G.E. to organize at all would pose a significant security

11

risk and escalate racial tensions." See Dkt. # 90 at 19. Defendants completely fail to describe any less restrictive measure they considered and rejected before adopting the policy of a complete ban on NGE group time in the chapel.  As a result, Defendants Jones and Brown have failed to satisfy RLUIPA's stringent test requiring a compelling governmental interest and the least restrictive means. They are not entitled to summary judgment on this claim.

Today's ruling does not prohibit ODOC from imposing restrictions or limitations on NGE group meetings in the chapel after undertaking serious consideration of any other alternatives. Within sixty (60) days of the entry of this Opinion and Order, Defendants Brown and Jones shall submit a written plan accommodating Plaintiff's request for space and time in the prison chapel for the religious exercise of his NGE beliefs using the least restrictive means to advance their compelling government interest, or demonstrate that there are no less restrictive means, other than a total ban, to ensure institutional security.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to supplement his response to Defendants' second motion for summary judgment (Dkt. # 100) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Reassert His Motion for Preliminary Injunction (Dkt. # 103) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' second motion for summary judgment (Dkt. # 90) is **granted in part** and **denied in part** as follows: Defendant McClary's motion for summary judgment is **granted** as to Plaintiff's claim based on the book Stoic Warriors and Defendant McClary is terminated as a party; Defendants Jones and Brown are not entitled to summary judgment on Plaintiff's request for NGE group time in the chapel and their motion for summary judgment is **denied**.

**IT IS FURTHER ORDERED** that within sixty (60) days of the entry of this Opinion and Order, Defendants Brown and Jones shall submit in writing either a plan accommodating Plaintiff's request for space and time in the prison chapel for the religious exercise of his NGE beliefs using the least restrictive means to advance their compelling government interest, or a demonstration that there are no less restrictive means, other than a total ban, to ensure institutional security. Plaintiff may file a response to Defendants' submission within thirty (30) days of its filing.

**DATED** this 9th day of September, 2011.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT